UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | |
| **JEFFERY P. OLINDE** | **NO. 03-143-D-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, October 23, 2007.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | |
| **JEFFERY P. OLINDE** | **NO. 03-143-D-M2** |

**MAGISTRATE JUDGE'S REPORT**

This matter is before the Court on the Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence (R. Doc. 80) filed by Jeffery P. Olinde ("Olinde"). The United States of America ("United States"), has filed an opposition to Olinde's motion. (R. Doc. 83).

**FACTS & PROCEDURAL BACKGROUND**

On or about June 27, 2003, Deputy Craig Beamon, a detective with the Ascension Parish Sheriff's Department, and Special Agents Joey Gahn, Augustine Lugo, Jr., Christian Ladner, and Jeffrey Powell of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, arrived at the residence of Olinde, located at 9398 Kurt Kundler Road, Gonzales, Louisiana, to execute a federal search warrant for firearms which had been issued by the undersigned.[1] When Gahn and Beamon arrived at the residence, Olinde was standing in an exterior shed located approximately ten (10) to fifteen (15) feet away from his house. Beamon and Gahn got out of the car, identified themselves as law enforcement officers, informed Olinde that they had a search warrant, and asked Olinde to step outside of the shed for officer safety, which he did not do.

Beamon and Gahn saw Olinde move about inside the shed and saw him gesture in

---

[1] The recitation of facts and procedural background herein is based upon the trial transcript and other evidence and pleadings in the Court's record.

1

a throwing motion as if he was discarding something. They then saw him move from the front of the shed to the back. Beamon again asked Olinde to step outside the shed; however, his directive was ignored. Beamon then stepped into the shed and pulled Olinde out of the shed, handcuffed him, arrested him, and advised him of his *Miranda* rights. Beamon and Gahn then searched the entire premises, including the shed.

Detective Will Reames, a Task Force Agent with the Drug Enforcement Administration who is employed as a narcotics detective by the Ascension Parish Sheriff's Department, was called to the scene because of his certification as a clandestine lab (methamphetamine lab) examiner. Reames assisted officers with the search of Olinde's residence and shed. While searching the shed, agents located a loaded Bryco Model Jennings 9, 9 mm semiautomatic pistol lying on a shelf; an electrical cord running from the residence to the shed; a garbage bag inside a milk crate which contained items commonly used in the manufacture of methamphetamine; a coffee filter, containing what was determined to be methamphetamine, on top of a glass jar in the area where they saw Olinde standing a few minutes earlier; latex gloves (found in the direction in which they believed Olinde threw something); chemicals ordinarily used in the manufacture of methamphetamine; plastic containers with tubing; jars; a butane bottle; a Coleman fuel tank; and Olinde's wallet. The agents also detected a moderate to strong, unpleasant chemical odor inside the shed.

Several minutes after Olinde was handcuffed, his wife, Kim Olinde ("Mrs. Olinde"), arrived at the residence, and one of the agents searched her car and located a Bryco Model Jennings .22 caliber semiautomatic pistol. While searching the master bedroom within the house, agents found two gun boxes in the closet, one of which was for the 9 mm

pistol found in the shed and the other for the .22 caliber pistol located in Mrs. Olinde's car. Nine millimeter ammunition was also found in a shoe box in the closet. A number of small bags with spades on them were located in a drawer in a computer desk in the master bedroom. The agents seized those bags because they were similar to the bags used by drug dealers who distribute street quantity levels of narcotics.

An expert in the identification of controlled substances and the manufacture of methamphetamine, Kiana Hamlett, testified at trial that the filter, which contained a small quantity of methamphetamine, was the last step in the meth-manufacturing process, at which time the manufacturer filters out the hydrochloride from the methamphetamine. She further testified that some of the materials discovered in Olinde's shed may be used in the manufacture of methamphetamine, and she positively identified the substance found in the coffee filter as containing methamphetamine. She also confirmed that the process of manufacturing methamphetamine can result in an unpleasant odor.

Following his arrest, Olinde informed the agents that he could not recall who brought the 9 mm pistol into the shed. He confessed that he had used methamphetamine on the previous night and that he was cooking methamphetamine. He also admitted that he had fired the 9 mm semiautomatic pistol located in the shed several days before, on or about June 15, 2003.

On July 9, 2003, Olinde was indicted by a grand jury, charging him in Count One with manufacture of methamphetamine; Count Two, with possession of a firearm by a convicted felon; Count Three, with possession of a firearm in furtherance of a drug trafficking crime; and Count Four, with possession of methamphetamine, in violation of 21 U.S.C. §841(a)(1), 18 U.S.C. §§ 922(g)(1) and 924(c)(1), and 21 U.S.C. § 844(a)

USCA5 338

respectively. The grand jury filed a superseding indictment on August 7, 2003, adding an additional count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and it modified its earlier firearm count by alleging that Olinde, as a convicted felon, possessed cartridges in violation of 18 U.S.C. § 922(g)(1).

On that same date, August 7, 2003, Olinde filed a motion to suppress evidence seized during the search of his residence and shed. He contended the search warrant was invalid because it was not based upon sufficient probable cause to believe he had engaged in criminal conduct and that evidence of criminal conduct would be present on the premises to be searched. He also alleged that the shed was not included in the warrant as a place the agents were authorized to search. On August 11, 2003, the United States filed a Notice of Sentencing Enhancement, advising Olinde that he was eligible to be sentenced as an Armed Career Criminal.[2] An evidentiary hearing was held on October 10, 2003 relative to Olinde's motion to suppress, and the parties subsequently filed various briefs concerning the motion. The Court ultimately denied the motion to suppress on November 18, 2003.

On December 4, 2003, the United States dismissed Count 5 of Olinde's superseding

---

[2] That Notice provided that, on November 18, 1980, Olinde was charged in the 19th Judicial District Court, with having committed simple burglary in violation of La. R.S. 14:62. On February 23, 1981, Olinde pled guilty as charged and was sentenced to serve three (3) years imprisonment at hard labor, with credit for time served. The state court suspended the balance of Olinde's sentence and placed him on supervised probation for three (3) years. On December 16, 1982 and January 14, 1983, Olinde was charged in the 19th Judicial District Court with two counts of armed robbery in violation of La. R.S. 14:64. On November 22, 1983, Olinde pled guilty to both counts of armed robbery and was sentenced to serve two (2) concurrent terms of seventeen (17) years confinement at hard labor.

The Notice further explained that, if Olinde was convicted of Counts One or Two of his indictment in this Court, he would be sentenced, as an Armed Career Criminal, to a term of imprisonment of not less than fifteen (15) years and not more than life and that he must serve a term of supervised release of not less than three (3) years and not more than five (5) years.

indictment, which charged him with possession of methamphetamine. A jury trial commenced on January 12, 2004. Following presentation of the United States' case, on January 13, 2004, Olinde requested a judgment of acquittal as to Count One of the superceding indictment on the ground that the United States failed to produce evidence, corroborating his oral confession to authorities that he possessed a firearm on the date alleged in that count. The Court deferred ruling on the motion until after trial. Olinde called a single witness to the stand, Mrs. Olinde, and rested. The United States then called several rebuttal witnesses.

Following deliberations, the jury found Olinde guilty as charged. The Court ordered the United States and Olinde to submit memoranda concerning Olinde's motion for judgment of acquittal as to Count One. Following receipt of the parties' memoranda, the Court granted Olinde's motion on March 11, 2004, and dismissed Count One of the superseding indictment.

The probation office published its Presentence Report ("PSR") on April 15, 2004. The PSR indicated that Olinde qualified to be sentenced as an Armed Career Criminal pursuant to 18 U.S.C. § 922(g)(1) because he had prior convictions for simple burglary of a business and two counts of armed robbery. As an Armed Career Criminal, Olinde faced a term of imprisonment of not less than fifteen (15) years (180 months) and not more than life. In addition, because Olinde was convicted of possession of a firearm in furtherance of a drug trafficking crime in violation of § 924(c)(1), he faced a consecutive term of imprisonment of not less than five (5) years (60 months) and not more than life. Considering Olinde's qualification as a career offender, the probation officer estimated his guideline offense level to be a 34 with a criminal history category of 6, and Olinde's

guideline imprisonment range was therefore 262 to 327 months (21.8 to 27.2 years) plus a consecutive term of imprisonment for the § 924(c)(1) violation.

Olinde's sentencing occurred on September 23, 2004. At that time, the United States filed copies of bills of information and court minutes indicating Olinde's prior felony convictions for armed robbery and burglary of a business structure. Relying upon *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Olinde objected to the probation officer's use of facts in his report, which had neither been alleged in the indictment nor resolved by a jury. The Court overruled Olinde's *Blakely* objections, citing *United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004),[3] and sentenced Olinde to a term of imprisonment consisting of 262 months to run consecutively to a sixty (60) month term of incarceration for the § 924(c)(1) violation.

Olinde appealed his conviction and sentence on October 4, 2004, both of which were affirmed by the Fifth Circuit Court of Appeals on April 20, 2006. Olinde then filed the present motion to vacate, set aside, or correct sentence on May 16, 2007. In his present motion, Olinde asserts the following claims: (1) that his counsel was ineffective in failing to argue on appeal that, since *United States v. Booker*, the mandatory sentencing guidelines are unconstitutional; (2) that his counsel was ineffective on appeal in failing to properly argue that the manner in which the officers and agents executed the search warrant was unconstitutional; (3) that his counsel was ineffective in failing to interview individuals helpful to his defense; (4) that his counsel was ineffective in failing to inform him that he could be sentenced as an Armed Career Criminal if convicted as charged; (5) that

---

[3] *Pineiro* was subsequently overruled by *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

the affidavit attached to the search warrant was flawed; (6) that the search warrant failed to indicate whether it was executed in the daytime or nighttime; (7) that the search of his residence was improper since it was not executed within the time period set forth in the warrant; (8) that the United States denied his right of due process by failing to allege his prior convictions in the indictment and by not proving them to a jury beyond a reasonable doubt; and (9) that the appearances he made before the undersigned Magistrate Judge (including his appearance to enter a plea of not guilty) were flawed since the undersigned is not an Article III judge, thereby tainting his conviction and sentence.

## **LAW & ANALYSIS**

I.  **Claim No. 1 – Was Olinde's counsel ineffective in failing to argue on appeal that the mandatory sentencing guidelines are unconstitutional under *Booker*?**

The effectiveness of appellate counsel is judged under the same standard used for trial counsel, which is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Thus, to prevail, Olinde must demonstrate, first, that his counsel's representation was "deficient" and, second, that the deficient performance caused him "prejudice." *Id.*[4]

---

[4] To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). The court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. *Bridge*, 838 F.2d at 773; *Martin*, 796 F.2d at 816. Mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment. *Strickland*, 104 S. Ct. at 2066.

To determine whether Olinde's counsel acted ineffectively, the Court must briefly examine the legal and factual landscape surrounding Olinde's sentencing. As discussed above, at the time of his sentencing, Olinde asserted several objections to the PSR based upon *Blakely v. Washington*.[5] Specifically, he objected to Paragraphs 11, 12, 13, 14, 16, 17, and 19 of the PSR. Those paragraphs related to the defendant's drug-trafficking and firearm possession charges in the indictment and did not in any way address the sentencing enhancements applied to the defendant based upon his status as an Armed Career Criminal. Considering the Fifth Circuit's interpretation of *Blakely* in *Pineiro*, the Court denied Olinde's objections to the PSR and then used the defendant's prior criminal history and the jury's finding of guilt on the §924(c) violation to determine a guideline imprisonment range of 262 to 327 months.

Several months after Olinde's sentencing, on January 12, 2005, the U.S. Supreme Court, in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d. 621 (2005),

---

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 104 S. Ct. at 2067. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2068. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.*

[5] In *Blakely*, the U.S. Supreme Court held that a state trial court's sentencing of a defendant to more than three years in excess of the statutory maximum of the standard range for the offense of which he was convicted, on the basis of the sentencing judge's finding that the defendant acted with deliberate cruelty, violated the defendant's Sixth Amendment right to trial by jury. Following *Blakely*, confusion existed as to whether that decision applied to the federal sentencing guidelines, and just a few months prior to Olinde's sentencing, on July 12, 2004, the Fifth Circuit rendered a decision in *U.S. v. Pineiro,* 377 F.3d 464 (5th Cir. 2004), that *Blakely* did not apply to the federal sentencing guidelines and that the determination of a defendant's sentencing range, through a judge's factual findings based upon the sentencing guidelines, was not unconstitutional.

held that the federal sentencing guidelines are subject to the jury trial requirements of the Sixth Amendment, and their mandatory application violates that amendment because it requires courts to impose sentencing enhancements based upon facts which have not been found by a jury or admitted by the defendant. Based upon *Booker*, the sentencing guidelines became advisory rather than mandatory, meaning that courts are only to "consult the guidelines and take them into account when sentencing." *Id.*, at 767.

On June 10, 2005, Olinde's counsel filed an appellate brief on his behalf, wherein he challenged the search warrant and related search of Olinde's residence/shed conducted by the agents. He did not raise any issues relative to the enhancement of Olinde's sentence based upon his status as an Armed Career Criminal. *See, United States v. Olinde*, 2006 WL 1049048 (5th Cir. 2006).

When a party does not lodge a specific objection in the district court, such as in the present case where Olinde's *Blakely* objections did not relate to his enhanced sentence range as an Armed Career Criminal, the standard of review, had appellate counsel raised the issue on appeal, would have been the "plain error" standard. Under that standard, before an appellate court can correct an error not raised in the trial court, there must be (1) an error; (2) that is plain; and (3) that affects substantial rights. *United States v. Santiago*, 466 F.3d 801, 803 (9th Cir. 2006). The first prong of the plain error test is satisfied in this case. Under the mandatory guideline system in place at the time of Olinde's sentencing, his sentence was enhanced based upon findings made by the judge that went beyond the facts admitted by the defendant or found by the jury. *U.S. v. Mares*, 402 F.3d 511 (5th Cir. 2005). Since *Booker*, the error is also considered "plain," meaning "clear" or "obvious;" thus, the second prong of the plain error test is also satisfied in this case. *Id.*, citing

9

*Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)(An error is plain even though an objection at trial was not warranted under existing law, but a superseding decision before appeal reverses that well-settled law.  It is enough that the law was settled at the time of appellate consideration to make the error "plain").

The third prong of the plain error test requires a showing that the error "must have affected the outcome of the district court proceedings."  *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).  To meet that standard, the proponent of the error must demonstrate a probability "sufficient to undermine confidence in the outcome."  The Supreme Court has explained that the defendant's burden of establishing prejudice under the third prong of the plain error test "should not be too easy" and has faithfully enforced that burden of proof by requiring:

> the defendant to show that the error actually did make a difference:  if it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped, the defendant loses.

*Mares*, at 522, quoting *U.S. v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005).

Where the plain error in question is the use of extra verdict enhancements to reach a sentence under guidelines that bind the judge, as in this case, the "pertinent question" in determining whether the third prong of the plain error test is satisfied is whether Olinde has demonstrated that the sentencing judge – sentencing under an advisory scheme rather than a mandatory one – would have reached a "significantly different result."  *Mares*, at 522.  As noted above, in the present case, the District Judge used the jury's finding of guilt on the §924(c) violation (the conviction for possession of a firearm by a convicted felon) to determine a guideline imprisonment range of 262 to 327 months and sentenced him at the

10

bottom of that range to 262 months in prison. According to the transcript from the sentencing hearing, the District Judge conceded that such sentence was "harsh" but found that the sentence would be "of benefit" to the defendant and was justified because "over the years [Olinde] . . . demonstrated that [he did] not want to abide by the laws that the Legislature and Congress have enacted." The District Judge also determined that Olinde's sentence was appropriate because he had involved his family and friends in a scheme to manufacture and sell a prohibited substance. Considering the District Judge's comments at sentencing, it does not appear that he would have reached a "significantly different result" had he only considered the sentencing guidelines in an advisory manner as required by *Booker*.

Furthermore, Olinde has not produced any evidence suggesting that the District Judge would have reached a different result under *Booker*. Conclusory assertions that his sentence possibly would have been different had the guidelines only been considered in an advisory manner are insufficient to satisfy Olinde's burden of proof. *Mares*, at 522. Thus, since Olinde has not established that the Fifth Circuit would have found "plain error" as a result of his counsel's failure to assert objections to his enhanced sentence based upon *Booker*, he has likewise failed to demonstrate that he was prejudiced by his counsel's conduct in not raising the issue on appeal and has therefore failed to establish ineffective assistance of counsel on that ground.

**II.    Claim Nos. 2, 5, 6, and 7 pertaining to the search warrant:**

The Fifth Circuit has held that, generally speaking, a §2255 motion provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without

USCA5 346

jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *U.S. v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995). Thus, a motion to vacate sentence does not reach errors of constitutional or jurisdictional magnitude that could have been reached by direct appeal. *Id.*

On appeal, the Fifth Circuit concluded that several of Olinde's claims relative to the search warrant lacked merit. Specifically, the court of appeal rejected Olinde's claim that the search warrant was not supported by probable cause and that the search exceeded the warrant's scope because it began three hours before the specified start-time and included a non-listed building (*i.e.*, the shed). Since those issues were raised on direct appeal, they should not be reconsidered herein. *Varela v. United States*, 481 F.3d 932, 935-936 (7th Cir. 2007)(Issues that were raised on direct appeal may not be reconsidered on a motion to vacate sentence absent changed circumstances).

Furthermore, relative to Olinde's other claim that the search warrant was invalid because the affidavit attached to it was not sworn under penalty of perjury, Olinde is procedurally barred from raising such claim herein because he did not raise it on appeal or at the time he filed his motion to suppress the evidence obtained by virtue of the warrant. *U.S. v. Willis*, 273 F.3d 592, 597 (5th Cir. 2001)(Defendant never raised the denial of right to testify issue at trial or on direct appeal, and it appears that he is therefore procedurally barred from raising it through a §2255 motion). A §2255 movant who fails to raise a constitutional or jurisdictional issue on direct appeal waives the issue for collateral attack on his conviction, unless there is cause for the default and prejudice as a result. *Id.* Olinde has failed to overcome the procedural bar because he has not asserted any cause

12

for his default in failing to raise the claim at trial or on direct appeal, and he has failed to demonstrate that he was prejudiced as a result of the allegedly flawed affidavit.

Finally, the Court agrees with the United States that this claim is frivolous and is not the type of constitutional or jurisdictional issue appropriately raised through a §2255 motion. The affidavit in question indicates that the affiant, Special Agent Lugo, presented it to the undersigned and swore to its truthfulness. Accordingly, the affidavit complies with the basic requirement of the Fourth Amendment that a search warrant be issued upon probable cause "supported by oath or affirmation," and the fact that Olinde's counsel failed to object to the affidavit/warrant, in the motion to suppress and/or on appeal, therefore does not constitute ineffective assistance of counsel. *U.S. v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002).[6]

### III.   Claim Nos. 3 and 4 – Counsel's effectiveness at trial:

In Claim Nos. 3 and 4, Olinde contends that his counsel was ineffective in failing to interview witnesses who would have helped his defense and in failing to inform him that he could be sentenced as an Armed Career Criminal if convicted as charged. Relative to Claim No. 3, the Court finds that, since Olinde has not identified the witnesses at issue and their expected testimony, he has failed to demonstrate that his counsel was deficient in not interviewing and calling such witnesses. *Sayre v. Anderson*, 238 F.3d 631 (5th Cir. 2001).

---

[6] An "oath or affirmation" supporting a showing of probable cause, which must exist under the Fourth Amendment's warrant requirement, is a formal assertion of, or attestation to, the truth of what has been, or is to be, said. *Id.*; *U.S. v. Bueno-Vargas,* 383 F.3d 1104 (9th Cir. 2004)(*Black's Law Dictionary* 1099 defines an oath as a "solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true." Black's defines an affirmation as a "pledge equivalent to an oath but without reference to a supreme being or to 'swearing'." The question is whether the declarant expressed the fact that he or she is impressed with the solemnity and importance of his or her words and of the promise to be truthful, in moral, religious, or legal terms).

13

Furthermore, the Fifth Circuit has specifically recognized that claims regarding uncalled witnesses are disfavored because allegations regarding the information to which a witness would have testified are "largely speculative." *Lockhart v. McCotter*, 782 F.2d 1275, 1277 (5th Cir. 1986)("Where the only evidence of a missing witness' testimony is from the defendant, the Court views claims of ineffective assistance of counsel with great caution"). Self-serving, conclusory statements that a witness' testimony would have resulted in an acquittal, standing alone, fall far short of demonstrating the prejudice necessary to prove ineffective assistance of counsel. *Sayre*, at 635. Since Olinde has done nothing more than provide conclusory assertions that the testimony of additional witnesses would have helped his defense, the Court finds that he has failed to demonstrate that his counsel was ineffective for failing to interview and call those witnesses.[7]

As to Claim No. 4, however, the Court finds that Olinde is entitled to an evidentiary hearing on the issue. The United States failed to make any reference in its opposition to Olinde's claim that his counsel failed to advise him that he could receive an enhanced sentence based upon his status as an Armed Career Criminal. It has been held that any error by counsel which results in an increase in a defendant's sentence is *per se* prejudicial, and a failure by counsel to properly advise a defendant as to the maximum sentence he could receive falls below the objective standard of reasonableness provided for effective assistance of counsel under *Strickland v. Washington*. *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001); *Teague v. Scott*, 60 F.3d 1167, 1171 (5th

---

[7] For example, in *Sayre*, the Fifth Circuit explained that a defendant could submit affidavits (or similar matter) suggesting the information to which the unidentified favorable witnesses would have testified. *Id.*, at 636.

14

Cir. 1995).[8] Considering Olinde's allegation that his counsel "did not tell him about this car[ ]eer enhancement, or the dangers it posed to [his] going to a criminal trial," the Court finds that an evidentiary hearing is needed, at which time Olinde and his trial counsel, John Calmes, can testify as to whether Olinde was informed of the possibility of an enhanced sentence prior to proceeding to trial. However, considering that Olinde is currently proceeding *pro se* in this matter, the Court will need to appoint counsel to represent him at that hearing and schedule a status conference to discuss evidentiary matters prior to the hearing. A separate Order will be issued by the undersigned this date relative to those two issues.

**IV.     Claim No. 8 – Did the United States violate Olinde's due process rights by failing to notify him that he would be sentenced as an Armed Career Criminal if convicted?**

The Court first notes that this claim lacks merit because, as noted above in the "Facts & Procedural Background" section of this report, the United States notified Olinde and/or his counsel that Olinde was eligible to be sentenced as an Armed Career Criminal through a "Notice of Sentencing Enhancement" filed on August 11, 2003. (R. Doc. 18). Furthermore, to the extent Olinde is asserting a *Blakely* objection on the ground that his prior convictions, which qualified him as an Armed Career Criminal, were not alleged in the indictment and proven to the jury by the United States, the Court also finds that claim to be without merit.

---

[8] Where a defendant has not been properly advised by his counsel of the maximum sentence he could receive, he is unable to make an intelligent choice of whether to accept a plea or take his chances at trial. *Id; See also, United States v. Grammas*, 376 F.3d 433, 436-437 (5th Cir. 2004)(Counsel's erroneous advice that the defendant, who received a seventy (70) month sentence, faced only a potential six (6) to twelve (12) month sentence constituted deficient performance, for purposes of determining whether the defendant was deprived of effective assistance of counsel).

USCA5 350

It has been specifically held that, despite the U.S. Supreme Court's holdings in *Booker, Blakely*, and *Apprendi* (which rely upon the premise that any fact, other than the fact of prior conviction, which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt), the Supreme Court's earlier case of *Almendarez-Torres v. United States*, 118 S.Ct. 1219 (1998), has not yet been overruled.  *Almendarez-Torres* provides that an enhanced sentence may be imposed based upon prior convictions not alleged in the indictment and therefore not proven beyond a reasonable doubt.  The Fifth Circuit Court of Appeal and courts in other circuits have held that, because *Almendarez-Torres* has not been overruled, the argument asserted by Olinde is foreclosed.  *U.S. v.* Mata, 491 F.3d 237, 245 (5th Cir. 2007); *U.S. v. Shelton*, 400 F.3d 1325, 1329 (11th Cir. 2005); *U.S. v. Garcia-Cardenas*, 129 Fed. Appx. 96 (5th Cir. 2005); *U.S. v. Rodriguez-Garza*, 126 Fed. Appx. 322 (7th Cir. 2005); *Jaramillo v. State*, 823 N.Ed.2d 1187 (Ind. 2005).[9]  Accordingly, Claim No. 8 will also be

---

[9] *See also, People v. Garry*, 323 Ill.App.3d 292, 257 Ill.Dec. 64 (Ill. App. 4 Dist. 2001):

> [D]espite the [*Apprendi*] Court's reservations about its continuing validity, the Court chose not to overrule *Almendarez-Torres*. Needless to say, only [the Supreme Court] may overrule one of its own precedents.  Until that occurs, [*Almendarez-Torres*] is the law.'  *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S. Ct. 1343, 75 L.Ed.2d 260 (1983)(per curium); see also *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed2d 556 (1982)(per curium)('But unless we wish anarchy to prevail within the federal judicial system, a precedent of this court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.')  Since *Almendarez-Torres* was plainly addressed, but not overruled by the Supreme Court in *Apprendi*, the court is obligated to apply it in this case. *United States v. Powell*, 109 F.Supp.2d 381, 383 (E.D.Pa. 2000).

*Id.*; *United States v. Thomas*, 242 F.3d 1028 (11th Cir. 2001); *United States v. Orduno-Mireles*, 405 F.3d 960, 962-963 (11th Cir. 2005).

dismissed.

## V. Claim No. 9 – Were the preliminary proceedings before a Magistrate Judge flawed?

Pursuant to 28 U.S.C. § 636(a)(1), a magistrate judge shall have, within the district in which sessions are held by the court that appointed the magistrate, all powers and duties conferred or imposed by law or by the Rules of Criminal Procedure for the United States district courts. 28 U.S.C. §636(a)(1). Such powers include the power to rule on applications for search warrants, such as occurred in this case. *In re U.S.*, 10 F.3d 931(2nd Cir. 1993)(A magistrate's power to rule on applications for search warrants does not stem from the 1976 Amendment to the Magistrate's Act but, rather, such authority resided with the United States Commissioners, the predecessors to federal magistrates, since prior to the 1968 Magistrate's Act).

Moreover, Federal Rule of Criminal Procedure 5 authorizes magistrates to conduct certain preliminary proceedings in criminal cases, such as those which occurred in the present matter. For example, Fed. R. Cr. P. 5(a)(1)(A) provides that a person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, for an initial appearance, unless a statute provides otherwise. Fed. R. Cr. P. 5(a)(1)(A). If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless the defendant waives the hearing; is indicted; the government files an information under Rule 7(b) charging the defendant with a felony; the government files an information charging the defendant with a misdemeanor; or the defendant is charged with a misdemeanor and consents to trial before a magistrate judge.

USCA5 352

Fed. R. Cr. P. 5.1(a). Considering those provisions, it is clear that the preliminary proceedings conducted by the undersigned relative to Olinde (the Rule 5(a) initial appearance hearing, arraignment, and issuance of the search warrant) were authorized, and Olinde's claim that such proceedings could only be performed by an Article III judge should be dismissed.

## RECOMMENDATION

For the above reasons, it is recommended that the Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence (R. Doc. 80) filed by Jeffery P. Olinde, be **DENIED IN PART**, in that all claims of Olinde should be dismissed, except his claim that his counsel was ineffective in failing to advise him before trial that he could receive an enhanced sentence as an Armed Career Criminal. The undersigned will defer issuance of a final recommendation relative to Olinde's remaining claim until after an evidentiary hearing is conducted regarding that claim.

Signed in chambers in Baton Rouge, Louisiana, October 23, 2007.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**